Alan W. LADD and Sue Carol Ladd, Appellants,

v.

Robert A. RIDDELL, District Director of Internal Revenue, Los Angeles, California, etc., Appellee.

No. 17759.

United States Court of Appeals Ninth Circuit.

Oct. 22, 1962.

———◆———

J. Everett Blum and Lloyd G. Rainey, Beverly Hills, Cal., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Benjamin

M. Parker, Attorneys, Department of Justice, Washington, D. C., Francis C. Whelan, U. S. Atty., Walter S. Weiss, Asst. U. S. Atty., Chief, Tax Section, and Loyal E. Keir, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and HAMLIN, Circuit Judges, and SOLOMON, District Judge.

SOLOMON, District Judge.

Alan W. Ladd, a taxpayer,[1] appeals from a judgment of the United States District Court denying his claim for refund of federal income taxes for the taxable year ended December 31, 1954.

In 1952, Taxpayer, a citizen of the United States and a well-known actor, was employed by Warwick Productions, Inc., to act in "The Red Beret", a motion picture to be produced in England and to be exhibited throughout the world. For his services, Taxpayer was guaranteed the sum of $200,000, plus certain fringe benefits.[2] In addition to the "guaranteed compensation," Taxpayer was entitled to receive approximately ten per cent of the gross receipts in excess of $2,000,000 as "deferred compensation."

He worked from September 20, 1952, until December 6, 1952, a period of approximately eleven weeks, and was paid the $200,000 in 1952. In 1954, he received $73,998.97 which had become due to him in that year as deferred compensation.

Taxpayer arrived in England on September 12, 1952, and left England on December 26, 1952, but did not return to the United States until February 27, 1954, a period of 514 full days in a period of 18 consecutive months.

In his income tax return for the taxable year ended December 31, 1954, Taxpayer reported the $73,998.97 received in 1954 as deferred compensation "at-tributable to personal services actually rendered in a foreign country in and during the calendar year 1952." He excluded from gross income $3,178.08, which is 58/365ths of $20,000.

Approximately three years later, Taxpayer filed with the Commissioner of Internal Revenue a claim for refund for the year 1954 asserting that the entire $73,-998.97 should have been excluded from his gross income. Thereafter Taxpayer filed this action to recover $65,578.69. Both the claim and this action were timely filed. The case was submitted to the District Court on stipulated facts, and from an adverse judgment, Taxpayer appealed.

In 1951, § 116(a) (2) was added to the Internal Revenue Code of 1939, 26 U.S. C.A § 116(a) (2), by 65 Stat. 498. This section excluded from gross income

"[i]n the case of an individual citizen of the United States, who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States * * * if such amounts constitute earned income * * * attributable to such period; * * *."

In 1953, § 116(a) (2) was amended by § 204(a) of the Technical Changes Act, 67 Stat. 615, which added this limitation:

"If the 18-month period includes the entire taxable year, the amount excluded under this paragraph for such taxable year shall not exceed $20,000. If the 18-month period does not include the entire taxable year, the amount excluded under this paragraph for such taxable year shall not exceed an amount which bears the same ratio to $20,000 as the number of days in the part of the taxable year within the 18-month

---

1. The wife of Alan Ladd was also one of the plaintiffs in the trial court, because they had filed a joint income tax return. In this opinion, unless otherwise noted, we will refer to the husband as Taxpayer.

2. Taxpayer was paid all first class traveling expenses and living expenses for himself, his wife, four children and nurse.

period bears to the total number of days in such year."

Section 204(c) of the Technical Changes Act further provided:

"The amendment made by subsection (a) shall apply with respect to taxable years ending after December 31, 1952, but only to amounts received after such date. In the case of any taxable year beginning in 1952 and ending in 1953 the exclusion of amounts received after December 31, 1952, shall not exceed an amount which is the same proportion of $20,000 as the number of days in such taxable year after December 31, 1952, is of 365 days."

Section 116(a) (2), as amended, was re-enacted as § 911(a) (2) of the 1954 Code, 26 U.S.C.A. § 911(a) (2).

During the period January 1, 1951, to January 1, 1953, there was no limitation upon the amount of earned income which could be excluded from gross income under § 116(a) (2). Taxpayer contends that since the $73,998.97 received by him as deferred compensation in 1954 was "attributable to" the services he performed in 1952, the limitation imposed by the 1953 amendment is not applicable to that income. He urges that "taxable year," as used in subsections (a) and (c) of § 204 of the Technical Changes Act of 1953, should be construed to mean the year in which the services to which the income is attributable were performed, rather than the year in which the income accrued to the taxpayer or was paid to him.

■ We do not agree with this construction. Section 7701(a) (23) of the 1954 Code defines "taxable year" as "the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the taxable income is computed" for income tax purposes. For a taxpayer who, like appellant, keeps his books and files his returns on a cash receipts and disbursements basis for calendar year periods, "taxable year" means the calendar year in which the particular item of income is received. See Renoir v. Commissioner, 37 T.C. 1180 (March 30, 1962). Taxpayer had no right to the $73,998.97 deferred compensation prior to the time it was paid to him in 1954. The fact that the income may have been "attributable to" services performed during a prior taxable year is immaterial. Cf. Wood v. United States, 104 F.Supp. 1020, 1022 (Ct.Cl.1952).

■ The Report of the Senate Finance Committee on the Technical Changes Act of 1953 shows that § 204 was designed to put an immediate end to the use of § 116(a) (2) by high salaried Americans, particularly motion picture actors and actresses, as a device to avoid payment of federal income taxes.[3] Our inter-

3. *"Section 204. Earned income from sources without the United States*

"Your committee deems it advisable to amend section 116(a) (2) of the Internal Revenue Code, effective as to amounts received after December 31, 1952. Section 116(a) (2) excludes from income in the case of a citizen of the United States income earned abroad if such citizen was present in a foreign country or countries for a period of 17 out of 18 consecutive months. While this paragraph was designed to encourage men with technical knowledge to go abroad in order to complete specific projects, it has been subject to a great deal of abuse. Some individuals with large earnings have seized upon the provision as an inducement to go abroad to perform services, which were customarily performed at home, for the primary purpose of avoiding the Federal income taxes. It has also been ascertained that in many cases Americans taking advantage of this provision do not pay any income tax even to the foreign country or countries in which the income is earned. This is because they are not in any particular foreign country long enough to establish a residence or because the foreign country in question does not impose any income tax. Under the House bill, section 116(a) (2) of the Internal Revenue Code is repealed effective as of April 15, 1953. Under your committee amendment, section 116(a) (2) is retained but is limited to $20,000 of earned income if the taxpayer is abroad for the full taxable year or to a portion thereof if the taxpayer is abroad for less than the full taxable year. While the

pretation of the amendment is clearly in accord with this purpose.

■ The limitation imposed by the 1953 amendment is applicable to "taxable years ending after December 31, 1952, but only to amounts received after such date." Appellant is a cash-basis taxpayer. He received the income in question during the taxable year ended December 31, 1954. The 18-month period during which Taxpayer was present in foreign countries included only 58 days of the taxable year 1954. Thus Taxpayer was entitled to exclude only 58/365ths of $20,000 ($3,178.08), the precise exclusion he claimed in his 1954 return. Taxpayer is not entitled to any refund.

■ Eleven months after this case was submitted to the trial court on stipulations of fact and issues, Taxpayer attempted to interpose an alternative ground for his claim for refund. He filed a motion to amend the "Stipulation of Facts and Statement of Issues" by adding the following new issue of law:

"If the above quoted provisions of Section 911(a) (2) do apply herein, whether both plaintiffs are entitled to each take the full amount of the exclusion permitted by said section, or whether only the taxpayer whose personal services generated the foreign income involved is entitled to the full amount of the exclusion."

The trial court denied the motion.

The issue raised by Taxpayer's motion had not been presented to the Commissioner in Taxpayer's claim for refund.

Section 7422(a) of the 1954 Internal Revenue Code provides in pertinent part:

"No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected * * * until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursurance thereof."

Section 301.6402-2(b) of the 1954 Internal Revenue Code Regulations provides:

"No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and the facts sufficient to apprise the Commissioner of the exact basis thereof * * *."

Since Taxpayer failed to raise the issue of whether both he and his wife are entitled to the full exclusion before the Commissioner, he has not satisfied the statutory prerequisite to raising the issue in this action. United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 272, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); B. F. Goodrich Co. v. United States, 135 F.2d 456, 461 (9 Cir. 1943), aff'd 321 U.S. 126, 64 S.Ct. 471, 88 L.Ed. 602 (1944).

Taxpayer's motion to amend was properly denied.

Judgment affirmed.

committee amendment applies to taxable years ending after December 31, 1952, it will cover only such amounts as are received on or after January 1, 1953. Your committee believes that an outright repeal of section 116(a) (2) is not necessary to correct the reported abuses under existing law. There are many legitimate business arrangements which necessitate sending technical personnel abroad. A limitation on the amount of the earned income from foreign sources which is exempt will, in the opinion of your committee, be sufficient to correct the evils which have been brought to its attention." S.Rep. No. 685, 83d Cong., 1st Sess. 5 (1953), 1953-2 U.S.Code Cong. & Ad.News p. 2427.