Bob HINDES and wife, Dorothy Lee Hindes, Appellants,

v.

UNITED STATES of America, Appellee.

UNITED STATES of America, Appellant,

v.

Bob HINDES and wife, Dorothy Lee Hindes, Appellees.

No. 23409.

United States Court of Appeals Fifth Circuit.

Jan. 13, 1967.

Certiorari Denied April 10, 1967.

See 87 S.Ct. 1307.

Muckleroy McDonnold, San Antonio, Tex., for appellants.

Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., Ted Butler, Asst. U. S. Atty., San Antonio, Tex., Jonathan S. Cohen, Atty., Dept. of Justice, Washington, D. C., Richard C. Pugh, Acting Asst. Atty. Gen., Gilbert E. Andrews, Attorney, Department of Justice, Washington, D. C., of counsel, for appellee.

Before TUTTLE, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

TUTTLE, Chief Judge.

This tax case is before us for the second time. In a prior decision, Hindes v. United States, 5 Cir., 326 F.2d 150, we affirmed the judgment of the trial court in denying a claim for refund of taxes paid by Bob Hindes and his wife, Dorothy Lee Hindes, for the year 1957.

It will do little good to restate all of the facts in the case, since they have been fully dealt with in our prior decision and in the subsequent opinion of the trial court on remand, 246 F.Supp. 147. Briefly stated, the issue here for decision arises from the following facts:

During the year 1957, Hindes negotiated with one Sechrist, for the sale of the Hindes ranch for the sum of $300,000. A written contract was entered into and Hindes accepted a $5,000 earnest money deposit. Thereafter, he reported this fact to his lawyer, who suggested that it would be cheaper taxwise if the sale were made on an installment basis. Title 26, U.S.C.A. § 453.

Thereafter, the lawyer organized the corporation, Tower Farm and Cattle Co., Inc., the stockholders consisting of Hindes's mother and father and the lawyer. The mother and father contributed $1,000 and the lawyer contributed $1,000 as the capital stock of the corporation. Thereupon, Hindes sold the farm to the corporation for $265,000 on ten year installments. The corporation then sold the ranch to the original purchaser, Sechrist, for $300,000 cash. Out of the $300,000, the corporation paid off a $58,574.81 first mortgage, leaving a net of $241,425.19, and a net due to Hindes of $206,425.19. The corporation paid the real estate commission of approximately $15,000, and the first installment of $20,000 to the taxpayers. Within a few days thereafter, the corporation made an unsecured four percent loan to Hindes in the amount of $200,000, due five years from date, with interest payable annually, the four percent interest equalled the interest that was due to Hindes on the installment sales. At the proper time the corporation paid $5,617.18 income taxes on the short term capital gain representing the profit of $35,000 difference between the $265,000 it bought the property from Hindes for, and the $300,000 it sold it for to Sechrist, after deducting the expenses of sale.

Taxpayers reported the sale price of $265,000 on their income tax return for 1957 on the installment basis. Of course, when the return was examined and the facts were ascertained, the installment basis for the contract was disallowed,

and a deficiency was asserted against the taxpayers on the basis of the sale at $300,000 less expenses. The taxpayers paid the deficiency and filed timely claim for refund and thereafter filed this suit.

The trial court granted the government's motion for summary judgment, which, in effect, provided for a computation of the tax substantially along the lines asserted by the Commissioner.

Upon appeal, this court affirmed the judgment of the trial court to the extent of approving the determination that there was a non-installment sale of the ranch by Hindes to Sechrist under the principle of Commissioner of Internal Revenue v. Court Holding Company, 1945, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981. The Court remanded for initial consideration by the trial court the question whether the sale by Hindes to Sechrist should be treated as a sale for the full $300,000 or for only the $265,000 that was the amount actually agreed to be paid by Tower Farm and Cattle Company, the corporation set up by the taxpayers as a conduit for the transfer of the property to Sechrist.

Upon remand, the trial court determined that the real purchase price for which the ranch was sold by Hindes to Sechrist was the full $300,000, less commissions, attorneys fees and other necessary expenses. However, the trial court determined that since the corporation had paid a federal income tax of $5617.18 on a corporate return for the year 1957, Hindes should be given credit for this payment. That court was confronted on remand with the question of what adjustment, if any, should be made in the taxpayers' income tax liability by reason of the fact that, on the theory under which the court had disallowed the installment sale, the corporation did not owe the tax which it paid, but the government had collected this much of the tax that was generated by reason of the sale. The trial court concluded that since the corporation was a sham, and since it realized no income from the transactions in its role as a conduit for the sale, and since the taxpayers, although not the shareholders, were the ultimate losers if the $5617.18 in taxes paid by the corporation was not to be credited to their account, it should allow a credit in that amount against taxpayers' liability, conditioned upon a filing of a claim for refund by the corporation within ten days after the judgment in the case becomes final.

The taxpayers appealed from the trial court's decision as to the disposition of the $35,000 difference, and the government appealed from the part of the trial court's order which allowed a credit for the corporation's tax payment.

Nothing need be said about the taxpayers' appeal. The brief, filed on their behalf, is completely without substance. On the direct appeal, therefore, the judgment of the trial court is affirmed.

The government's appeal from the allowance of the credit of the tax paid by the conduit corporation, presents an issue as to which the equities appear on the surface to be in favor of the taxpayer. This is recognized by the government, because unless the decision of the trial court is affirmed in relation to this payment, the United States will have been permitted to recover part of the taxes twice. This follows because, under the court's decision, Hindes will pay a tax on the gain from the sale of the ranch without the benefit of the installment provisions as a sale for $300,000, whereas the corporation which was set up by Hindes upon the advice of his lawyer in the futile effort to change the nature of the transaction, has already paid $5617.18 taxes on the sale by it to Sechrist, on the theory that it had enjoyed a gain between the price at which it acquired the property from Hindes and the price at which it was sold for $300,000 to the ultimate purchaser.

The government points out, however, that both credit for taxes paid and the refund of taxes illegally collected can be obtained by taxpayers only by following the statutory provisions relating to

claims for credit or refund.[1] The corporation filed no claim for refund for the taxes erroneously paid by it, and the time has long since expired during which it could make such claim. The taxpayer, Hindes, in the claim for refund made by him, did not claim credit for the amount paid by the corporation. Of course, we recognize that it would be inconsistent with the legal position which the corporation and Hindes then took for either of them to pursue a claim for refund or credit except by way of the filing of a protective claim by the corporation, or a protective claim for credit by Hindes.

It is to be noted that this court, on the prior appearance of the case here, did not expressly deal with Tower Farm and Cattle Company, Inc., as a nullity or a sham. We held that the sale was a sale by Hindes, under the principles of Commissioner of Internal Revenue v. Court Holding Company, supra, since the contract of sale had been executed before the property was thereafter transferred to the corporation for subsequent transfer to the purchaser.

■ The cross-appellee, through his counsel has not seen fit to call our attention to any basis on which such a corporation as that created as a conduit for an unsuccessful transaction, would be entitled to have a tax refund made to it, without complying with the statutory requirement respecting a claim for refund. Nor has counsel seen fit to discuss, for our enlightenment, any principle of law or equity which would warrant the court in setting aside or mitigating the effect of the claim for refund requirements.

The government points to the proposition that, even though the taxpayers would have a right to take advantage of the payment made by the corporation, they may not obtain credit or equitable recoupment, unless the claim for refund which they filed with the Commissioner asserted these grounds as a basis for the refund, citing Carmack v. Scofield, 5 Cir., 201 F.2d 360, 362; Fidelity-Philadelphia Trust Co. v. United States, 3 Cir., 222 F.2d 379; Campagna v. United States, 2 Cir., 290 F.2d 682, 685; Ladd v. Ridell, 9 Cir., 309 F.2d 51, 54. In the Carmack case this Court said:

"The filing of a timely claim for refund is a statutory prerequisite to a suit to recover taxes alleged to have been illegally collected. 26 U.S.C.A. § 3772(a) (1); United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025. The principal requirement of the statute, supra, and regulations supplementary thereto, is that the Commissioner be apprised by the timely filing of a claim of the exact basis upon which the claim for refund is predicated. United States v. Pierotti, 9 Cir., 154 F.2d 758. A taxpayer is not permitted to advance one ground for refund in his claim filed with the Commissioner and thereafter rely upon an entirely different ground in a subsequent suit for refund, but is confined to the scope of the grounds for refund asserted in his claim filed with the Commissioner. J. P. Stevens Engraving Co. v. United States, 5 Cir., 53 F.2d 1; Snead v. Elmore, 5 Cir., 59 F.2d 312; B. F. Goodrich v. United States, 9 Cir., 135 F.2d 456, affirmed on other grounds 321 U.S. 126, 64 S.Ct. 471, 88 L.Ed. 602; Ney v. United States, 8 Cir., 171 F.2d 449. Exceptions to this rule are not material here. See Tucker v. Alexander, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253. The wisdom of the rule was explained by this Court in Snead v. Elmore, supra, where we pointed out that its purpose is to permit the Commissioner to correct claimed errors in the first instance and, if disagreement persists, to limit the litigation to the issues which have been re-examined by the Commissioner and which he is prepared to defend." 201 F.2d 360, 361, 362.

Although taxpayers' counsel has not sought to assert any basis on which the

---

1. Internal Revenue Code of 1954, Section 6511(a) (b) (1).

court could overlook the requirements of filing a claim for refund by the corporate taxpayer, or a claim for credit by the individual taxpayers here, we have surveyed the provisions of Sections 1311, 1312 and 1313 of the Internal Revenue Code of 1954, in order to determine whether these sections contained some provisions warranting mitigation of the effect of the statute of limitations which now bars any refund or credit for the payment of $5617.18 by the corporation. We conclude that, since the corporation was not a "related taxpayer" to Hindes within the Definition Section of this Chapter of the Code, there is no relief available here.

The judgment is affirmed on the appeal of the taxpayers, and is reversed on the appeal of the United States, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.